UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | NO. 2:08-CR-33 |
| | ) | |
| JEFF FRANCIS TILLOTSON | ) | |

## REPORT AND RECOMMENDATION

Defendant has filed a Motion to Suppress [Doc. 33], which has been referred to the United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and the standing orders of this Court.

In the subject Motion, the defendant seeks to suppress statements made by him to officers during the execution of a search warrant on November 6, 2007, at defendant's residence located at 1240 Catawba Street in Kingsport, Tennessee. Defendant asserts that the statements were obtained without the antecedent warnings regarding the privilege against self-incrimination set out in *Miranda v. Arizona*, 378 U.S. 478 (1964).

On November 5, 2007, Special Agent Michelle Evans of the Bureau of Customs and Immigration, and who was and is the lead agent in the investigation and prosecution of the defendant, obtained a search warrant authorizing the search of defendant's residence for evidence of child pornography. Agent Evans, accompanied by various other federal and state law enforcement officers, went to the residence to execute the warrant on the morning of November 6, 2007.

Only Agent Evans testified at the hearing on the Motion to Suppress, and her

testimony was candid, believable and uncontradicted.

Prior to executing the warrant, Agent Evans had done much preliminary investigation regarding the occupants of the house to be searched. She had determined that at least four, and possibly six, individuals could be expected at the house when the search warrant was executed. She also learned that both defendant, and his step-father, Greg Lobrano, had permits to carry handguns issued by the State of Tennessee, and she therefore expected that weapons would be present in the house at the time of the search. She and the other officers, approximately ten in number, arrived at the residence at 8:00 a.m. on the morning of November 6th. She knocked on the door, which was answered by Greg Lobrano, who was still in his nightclothes. While Agent Evans identified herself and explained to Mr. Lobrano the reason for her and the officers' presence, and the purpose of the search, other officers began to enter the residence to secure the scene. Some officers carried shotguns and all were armed in some fashion. Agent Evans kept her weapon holstered during the entire event. The officers were dressed in clothing identifying themselves as law enforcement personnel.

Agent Evans remained on the porch with Mr. Lobrano discussing the warrant as the officers moved throughout the residence to locate the residents. Michael Lobrano, Mr. Lobrano's son, was handcuffed briefly for some unexplained reason.[1] In any event, the handcuffs were soon removed. Besides Mr. Lobrano and Michael Lobrano, the other occupants present at the time of the execution of the warrant were Dr. Lobrano (mother of the defendant), the defendant, and his wife Tiffany Tillotson.

At some point between 8:00 and 8:15 a.m., Agent Evans entered the residence with

---

[1] No one else was ever handcuffed.

2

Case 2:08-cr-00033-JRG-DHI   Document 94   Filed 11/10/08   Page 2 of 7   PageID #: 529

Mr. Lobrano. She then began to interview the occupants, beginning with Mr. Lobrano and Dr. Lobrano. They were interviewed as they sat on the couch in the living room. The other three occupants were sequestered in the den. Agent Evans stated that the interviews were conducted with the occupants separated in order to "preserve the integrity of the interviews." Agent Evans told the Lobranos that they were not under arrest and that no one would be arrested that day. She also told them that they did not have to talk to her if they did not wish. They consented to the interview and Agent Evans talked with them for about 15 minutes. They were then taken to the den. Michael Lobrano was then brought from the den to the living room. Agent Evans told him the same things that she had told Mr. Lobrano and Dr. Lobrano. He too consented to be questioned, and he was questioned for approximately 10 to 15 minutes. He was then taken back to the company of the other occupants.

The defendant was then brought from the den to living room. As she did prior to each of the other interviews, Agent Evans advised defendant that he was not under arrest and that no one would be arrested that day. She told him that he did not have to talk to her if he did not wish to do so. He consented to answer questions and he was interviewed by Agent Evans for about 15 minutes. At one point he asked if his mother, Dr. Lobrano, could bring him some medication. Agent Evans agreed, and Dr. Lobrano brought the medication.

After he was interviewed, defendant was escorted back to the den and his wife Tiffany was brought to the living room. After receiving the same assurances from Agent Evans as the other four, Ms. Tillotson consented to be interviewed. Her interview, like the others, lasted approximately 15 minutes.

F.B.I. Special Agent Sandra Farrow was also present during the interviews. No

3

Case 2:08-cr-00033-JRG-DHI   Document 94   Filed 11/10/08   Page 3 of 7   PageID #: 530

*Miranda* warnings were given to the defendant, or any other occupant, prior to or during the interview process.

At some point during the execution of the warrant, defendant asked if he could finish dressing. He was allowed to do so in the company of one of the officers. He also requested to go to the bathroom to relieve himself, and once again he was accompanied by an officer. The execution of the warrant took between two and three hours. Agent Evans testified that defendant, and any of the others, could have left if he or she wished, but would not have been allowed to return while the interviews and search were going on. She did not testify if the occupants were told they could leave, but it is reasonable to infer that they were not.

None of the occupants complained to her about anything.

Several months later, in April, 2008, Mr. Tillotson was indicted by the United States Grand Jury.

*Miranda* requires that warnings must be given to an individual advising him of his right against self-incrimination prior to him being interrogated when he is in custody or its functional equivalent. The person undergoing custodial interrogation must be warned that he has that right, and that any statement he makes can and probably will be used against him by the government. The sole question in this case is whether defendant was in custody or its functional equivalent when he was questioned by Agent Evans.

In *United States v. Salvo*, 113 F.3d 943, 950 (6th Cir. 1998), the Sixth Circuit discussed and adopted various factors to consider in deciding whether or not an interrogation was "custodial" in nature. In discussing cases decided by other circuits, the Court said:

> In these cases, the factors that courts have relied upon include: (1) the purpose of

4

the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or voluntarily admitted the officers to the residence and acquiesced to their requests to answer some questions.

In *United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000), the Court also stated that "in evaluating whether a defendant was in custodial interrogation, we look at the totality of the circumstances 'to determine how a reasonable man in the suspect's position would have understood the situation.' (quotations omitted). One factor is whether a reasonable person in the suspect's situation would have believed that he was free to terminate the interrogation and leave." This is an objective standard.

Looking at the first of the *Salvo* factors, there is no doubt that the purpose of the questioning of the defendant and the other individuals was to gather evidence to be used in an eventual prosecution.

As to whether the "place of questioning was hostile or coercive," one's home is not a coercive and hostile environment.

As to the length of the questioning, defendant was only questioned for approximately 15 minutes. His interview appears to have occurred sometime within the first hour of the execution of the warrant. The length of questioning is not a significant factor in this case.

The real question is whether there were "other indicia of custody" as set out in the fourth factor of *Salvo, supra.* The first inquiry under this factor is "whether the suspect was informed at the that the questioning was voluntary or that the suspect was free to leave..." The testimony of Agent Evans, which is the only evidence on this issue, is that she advised

5

the defendant that he did not have to talk to her if he did not wish to do so, that he was not under arrest, and that no one would be arrested that day. Agent Evans testified that defendant would have been free to leave the premises if he wished, although she did not explicitly tell him that he could do so. However, if one is advised he is not under arrest, and that he is not required to answer an officer's questions, would it be reasonable for him to assume that he was not free to leave? The answer to that question is "no." Agent Evans used no coercion; for that matter, she used no persuasion. She simply asked defendant if he would answer some questions, telling him immediately thereafter that the was free to decline. Defendant agreed.

Another inquiry under the fourth factor is "whether the suspect possessed unrestrained freedom of movement during questioning." Agent Evans stated that none of the occupants of the house, including the defendant, were allowed to roam about the house at will without an officer accompanying them. Naturally, there are valid reasons for this procedure by agents executing a search warrant; obtaining a weapon or spoiling undiscovered evidence immediately comes to mind. However, the question to be answered is not whether defendant had unrestrained freedom of movement around the house, but whether he had unrestrained freedom of movement *during questioning*. Agent Evans told defendant that he did not have to answer questions if he did not wish to do so. Thus, defendant could have eschewed the interview altogether, or he could have terminated it at any point he chose; he could have remained in the den, or he could have entered the living room, as he ultimately chose to do. He was free to roam about the entire house, although he would have been accompanied by an officer. Also, to end the unwelcome scrutiny and company of the officers, the defendant

6

could have left the house entirely, with the proviso that he would not have been allowed to return until the search was completed.

The better practice for prophylactic reasons, not to mention the protracted wrestling with this issue by the Court and all counsel, would have been to administer the *Miranda* warnings. Better practice, however, does not equate with legal necessity. The officers were justified in dressing as they did, arming themselves as they did, securing the premises to be searched as they did, and in watching the occupants as they did. The bottom line is that the defendant was free to refuse to talk, and that a reasonable person, based upon Agent Evans' assurances that no one was under arrest or would be arrested at that time, would have felt free to leave. This was not a custodial interrogation under *Miranda* and applicable Sixth Circuit case law.

It is respectfully recommended that the Motion to Suppress [Doc. 33] be DENIED.[2]

Respectfully recommended:

    s/ Dennis H. Inman
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be filed within ten (l0) days of its service or further appeal will be waived. Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947-950 (6th Cir. 198l); 28 U.S.C. § 636(b)(1)(B) and (C).